UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| William Allen Owens, #332121, | ) C/A No. 5:14-3685-RBH-KDW |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| | ) |
| Warden, Perry Correctional Institution, | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

William Allen Owens ("Petitioner"), a state prisoner, filed this pro se Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28

U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and

Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 18, 19.

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of

the summary judgment and dismissal procedures and the possible consequences if he failed to

respond adequately to Respondent's Motion. ECF No. 20. Petitioner filed a Response in

opposition to Respondent's Motion. ECF No. 23. Respondent did not file a reply to Petitioner's

Response. Having carefully considered the parties' submissions and the record in this case, the

undersigned recommends that Respondent's Motion for Summary Judgment be granted.

I.     Factual Background

On July 6, 2007, the body of Phillip McCreary ("the victim") was found by the edge of

the Edisto River. The victim had failed to return home from a fishing trip and was found by a

neighbor. The victim died from a gunshot wound to the back of his head. ECF No. 18-5 at 5

(factual statement from Petition for Writ of Certiorari). Petitioner became a suspect after the

1

Barnwell County Sheriff's received two telephone calls informing him that Petitioner should be looked at in connection with the victim's death. *Id.; see also* App. 229, 231.[1]

## II.    Procedural History

Petitioner is currently incarcerated at Perry Correctional Institution, part of the South Carolina Department of Corrections prison system. Pet. 1, ECF No. 1. In May 2008, a Barnwell County Grand Jury indicted Petitioner on one count of murder and one count of possession of a weapon during a violent crime. App. 823-26. A jury trial on the indictment was conducted before Judge Doyet A. Early, III on December 1-4, 2008. App 1-728. Attorney E. T. Moore, Jr. represented Petitioner, and Attorney Barbara Morgan represented the State of South Carolina at the trial. App. 1. The jury convicted Petitioner on both charges. App. 717. Petitioner was sentenced to life without parole on the murder conviction and was given a consecutive five-year sentence on the possession-of-a-weapon conviction. App.728.

A direct appeal from the convictions was filed in a timely manner, and on June 10, 2010, Chief Appellate Defender Robert M. Dudek filed an *Anders* brief on Petitioner's behalf with the South Carolina Court of Appeals.[2] ECF No. 18-1. The only issue that appellate counsel raised in the brief was,

> The court erred by refusing to allow appellant to introduce evidence that the decedent's son was a high ranking member in the Folk Nation gang. There was gang graffiti found near the bridge where the decedent was shot. Further, the jury was left without any context to evidence the decedent's son thought "forty-five," Cedric Thomas, killed the decedent since Thomas had threatened to shot [sic]

---

[1] Citations to "App." refer to the appendix of the record that was before the PCR court. It is on the docket of this case at ECF No. 18-1 through 18-13.

[2] *See Anders v. California*, 386 U.S. 738 (1967) (appointed appellate counsel may move to withdraw from representation after certifying a belief that the direct appeal that counsel filed is without merit).

anyone who told on him as a drug dealer in the head, and the decedent was shot in the head.

ECF No. 18-1 at 2. Petitioner filed a pro se brief in which he raised the following additional issue:

> Did the trial court erra [sic] by Overruling the Objection by the Appellants Attorney pertaining to the evidence found at Mrs. Sweats house. See pgs, 418, lines 23-25, pgs. 419 lines 1-11. Also see pgs. 578, lines 5-10, and all of pgs. 579, 580, 582, & pg. 583 lines 1-11.[3]

ECF No. 18-2 at 5. The South Carolina Court of Appeals granted appellate counsel's motion to withdraw and dismissed the appeal by written order dated June 28, 2011. ECF No. 18-3. *State v. Owens*, No. 2011-UP-339 (S.C. Ct. App. June 28, 2011).

Petitioner filed a post-conviction relief ("PCR") application on September 16, 2011, *Owens v. State*, No. 2011-CP-06-0353, App. 730-40, raising the following points (quoted verbatim):

> 1. Ineffective assistance of counsel.
>   . . . .
>   (a)  Counsel failed to properly prepare for trial;"
>   (b)  object to burden shifting;
>   (c)  see enclosed Memorandum

App. 732. In the Memorandum to which he referenced, Petitioner raised the following additional points (quoted verbatim):

> SUBJECT MATTER JURISDICTION NOT VESTED . . . .
> BURDEN SHIFTING MALICE CHARGE . . . .
> EXPERT WITNESSES . . . .
> TRIAL OBJECTIONS AND ERRORS . . . .
> PRIOR OFFENSES . . . .
> INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL . . . .

---

[3] The "evidence" to which Petitioner referred in this issue was a pink bag owned by his former girlfriend. When found by the girlfriend's sister at Petitioner's home, the pink bag contained jewelry that was later identified as belonging to the murder victim. The bag was found in the former girlfriend's belongings when her family retrieved them from Petitioner's home while both Petitioner and his girlfriend were in jail following their arrests. App. 409-19.

App. 737. In its Memorandum in Support of the Motion for Summary Judgment, the State quotes from the PCR court's dismissal order and expands the above-quoted "barebones" points raised by Petitioner by stating that with regard to "subject matter jurisdiction" Petitioner asserted that the "[i]ndictment left out necessary elements of the charges." ECF No. 18 at 3 (citing to App. 737-40); *see also* App. 742 (PCR court's order). Regarding "burden shifting malice charge," the State asserts that Petitioner contended that trial counsel was ineffective for "[f]ailure to object to improper charge on malice, which improperly shifted burden of proof from the State to the Defendant. (*see* Belcher)." *Id*. Regarding "expert witnesses," the State asserts that Petitioner contended that trial counsel was ineffective for "[f]ailure to call an expert witness to trial to rebut the State's expert testimony . . . counsel never vigorous cross examination state's witnesses." *Id*. at 2. Petitioner does not challenge the State's construction of his PCR grounds "to the extent that it contains nothing to negate his ground for relief based on his claims of whether the Court erred by excluding testimony that the decedent's son had a high ranking position in the Folk Nation gang., Ineffective Assistance of Trial Counsel, and subject matter jurisdiction." ECF No. 23 at 1. The State filed its return to the PCR application on December 20, 2011. App. 741-44. An evidentiary hearing was held July 10, 2012 in Aiken County before the Honorable Paul M. Burch. Attorney John E. Chambers, Jr. represented Petitioner and Assistant Attorney General David Spencer represented the State at the hearing. App. 746-811. Petitioner and Petitioner's trial counsel, Attorney E. T. Moore, Jr., testified at the hearing. App. 752-810.

Before the PCR testimony began, Petitioner's PCR counsel informed the judge that he had discussed the matter with Petitioner and that they would not be pursuing the jury-instruction or insufficient-indictment/subject-matter jurisdiction grounds that Petitioner had raised in his pro

se direct-appeal brief and PCR application because counsel did not believe they were legally appropriate under the circumstances of Petitioner's case. App. 750-51. In his PCR testimony, Petitioner's trial counsel testified that he and Petitioner had "lengthy" pretrial discussions about trial strategy, including the decision not to put on a defense case so that they would have the final argument before the jury. App. 753. Trial counsel stated that he filed "thirty to forty" pretrial motions in Petitioner's case, and that he "was aware of everything that was going to come in" as evidence at Petitioner's trial. App. 755-56. Trial counsel testified that it was Petitioner's own decision not to testify at trial, and that certain inconsistencies in the testimony of and about Petitioner's former girlfriend raised by PCR counsel were "addressed on cross examination." App. 756-57. Trial counsel stated that he "spoke with all of [Petitioner's] family members [who] would have been character-type witnesses" and with all of the State's witnesses." App. 758-59. Counsel stated that his strategy for Petitioner's trial was to establish a timeline through testimony from the State's witnesses and to "still reserve the right to have final argument." App. 759. Counsel confirmed that the timeline he established was based on certain witness testimony about a gunshot that was heard on the day of the crime, stipulated sunset times, and Petitioner's phone records and his former girlfriend's testimony. App. 761. He stated that he presented the timeline to the jury during closing argument and through presentation of "a big piece of paper or cardboard" on which the timeline was shown. App. 762. Trial counsel testified that he did remember if he personally "went out and met with" the farmer who testified about hearing the gunshot, but he talked to him and thought that the witness's statement to the police "was most beneficial to [Petitioner] and it wouldn't be of any use to try to change it." App. 763-64. Trial counsel acknowledged in his testimony that the post-trial jury interview

5

showed that the jury "just threw out the timeline defense pretty quickly." App. 764. Trial counsel also acknowledged that there were some inconsistencies in the Petitioner's former girlfriend's trial testimony and the pretrial statement that she gave to the police, but that he did not emphasize that in his closing statement to the jury. In this regard, he stated "[t]here were two witnesses who testified that [Petitioner] told them he committed the murder. I didn't see any purpose of bringing that testimony back out on closing statement." App. 766. Trial counsel stated that "every trial is different . . . there's strategic decisions to make in every case." App. 767. He stated that while the timeline strategy was not "the sum total of it . . . that was the best defense that I thought we could offer on [Petitioner's] behalf." *Id.*

When Petitioner's PCR counsel questioned trial counsel about not moving for a mistrial when a testifying police officer stated that Petitioner's former girlfriend was polygraphed when she returned to South Carolina, trial counsel stated that he believed that the trial judge's brief curative instruction to the jury was sufficient even though a motion for mistrial could have preserved that point for appeal. App. 772-73. Trial counsel also testified that he did not object to the prosecutor's statement in closing argument to the jury in which she stated, "I dare say that Defendant executed Reverend McCreary. He was on his knees and I dare say Reverend McCreary was praying," because trial counsel did not think the argument was objectionable and, even if he did think it was objectionable, he still would not have objected for strategic reasons. App. 667. Trial counsel addressed this point further by testifying:

> Reverend McCreary was shot in the back of the head, whether he was kneeling, sitting on the bucket, it didn't make any difference. You know the fact is he was shot in the back of the head. It is reasonable to assume that the person who's about to be shot in the back of the head would be praying. So I didn't think it was necessary or important to call that to the jury's attention. Sometimes you just don't want to get into things, you know, that could inflame the jury, you know, even more. Sometimes you just don't want to emphasize things by having it

repeated.

App. 776-77. Trial counsel stated that "[t]he case was largely circumstantial . . . ," but also stated that "[i]t's extremely difficult to defend a fellow in a murder case when he's confessed to two different people, both of whom were close acquaintances of his." App. 777-78. On cross examination, trial counsel acknowledged that Petitioner "put himself at the scene at the approximate time . . ." and that the crime scene expert had testified that the victim "was bent over at the time he was shot." App. 781. Trial counsel also acknowledged that Petitioner had told his girlfriend that he had killed the victim and told his cousin that he had shot the victim "on shore and thrown him in the river." *Id.* Trial counsel stated that the evidence did not support a true alibi defense for Petitioner and that "we were taking the statements and trying to formulate a timeline that would give the jury a reason to believe that he was not there." App. 782. Trial counsel stated that he did try to use testimony from a police investigator about threats allegedly made by a person the victim's son called "forty-five" to "develop a third-party defense . . . , but the trial judge prevented him from asking the investigator about whether the victim's son was "involved with the Folk Nation [gang]." App. 784. Trial counsel acknowledged that the investigator's brief statement on direct examination about Petitioner's former girlfriend being polygraphed did not indicate what the polygraph was "on" or whether the girlfriend "passed [the polygraph] or not." App. 786. Trial counsel stated that he did not think Petitioner "would have made a good witness had he testified." App. 789-90. On redirect examination, trial counsel stated that he did not request an alibi jury instruction or any other specific instruction based on the timeline that he had devised because "[y]ou wouldn't ask for something if it would be improper." App. 794. He stated that even if the statement about the polygraph had been more

detailed and harmful, he would not have wanted to call the jury's attention to it by asking for another curative instruction or moving for mistrial. App. 798-99.

Petitioner testified he met with trial counsel three times and they had "conversations [that] basically laid out [Petitioner's] side of the story . . . ," and that trial counsel "took notes and everything . . . ." during those meetings. App. 802-03. He stated that there was an eight or nine-month period of time during which he tried to contact trial counsel, but received no response. He said that there were no discussions about trial strategy during that period. App. 804. Petitioner testified that trial counsel contacted him again about two weeks before the trial was supposed to start and stated that he (Petitioner) "was requesting to put up a defense . . . ." App. 805. Petitioner stated that he gave trial counsel the names of "character witnesses and different people . . . ," and that he was "under the impression" that they were going to put up a defense at trial. App. 806. According to Petitioner, trial counsel took him and his mother into a room at the courthouse after the State had rested its case and told them that he wanted to have the last closing argument and to do so, they could not put on a defense. App. 806-07. Petitioner testified that he understood what trial counsel told him, but that he felt like he could "have explained exactly what was going on" had he been allowed to testify. Petitioner said he could have explained why he possessed rattlesnakes, that he could have told the jury that he was not the kind of person he was portrayed as being, he could have "explained where [he] was that day, what time it was, where [he] was supposed to be," and that he could have explained his "girlfriend's activities." He said that he thought "it would have been more beneficial had [he] put up a defense. App. 808. On cross examination, Petitioner acknowledged that he made the decision not to testify "partially because of the way [he] was under the impression of [his trial counsel]." App. 809. Petitioner

8

said that "if he was so dead set against going – putting up a defense that told me he wasn't ready for a defense, so I didn't want to put him out there and crash." App. 810.

The PCR court issued an order dated August 30, 2012, dismissing Petitioner's PCR application. App. 813-20. The PCR court's order contained the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to· review the record in its entirety and has heard the testimony presented at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. § 17-27-80 (2003).

## Ineffective Assistance of Counsel

Applicant makes various allegations of ineffective assistance of counsel. The burden of proof is on the applicant in a PCR proceeding to prove the allegations in his application. Bell v. State, 321 S.C. 238, 467 S.E.2d 926 (1996); Rule 71.l(e), SCRCP.

For an applicant to be granted PCR as a result of ineffective assistance of counsel, he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective performance. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984); Judge v. State, 321 S.C. 554, 471 S.E.2d 146 (1996). In order to prove prejudice, an applicant must show that but for counsel's errors, there is a reasonable probability the result at trial would have been different. Johnson v. State, 325 S.C. 182, 480 S.E.2d 733 (1997). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Id. Where trial counsel articulates a valid reason for employing certain trial strategy, such conduct should not be deemed ineffective assistance of counsel. Roseboro v. State, 317 S.C. 292, 454 S.E.2d 312 (1995); Stokes v. State, 308 S.C. 546, 419 S.E.2d 778 (1992).

This Court will now address each allegation of ineffective assistance of trial counsel below:

## Polygraph testimony

9

At trial, Applicant's girlfriend, Renee McKinney, who he lived with at the time of the murder, testified that Applicant told her he shot a black man by the river. She initially thought he might be joking, but later became convinced he was serious when he brought her by the crime scene. She fled with her two children to Maryland. SLED Agent Richard Johnson testified that as a result of the investigation, he went to Maryland to bring her back on belief of her possible involvement. Johnson testified as follows:

Q: And you interviewed her how long?

A: Oh, it was a period of time.

Q: And you took an initial statement from her?

A: That's correct.

Q: And then – and you arrested her?

A: Yes. We ended up arresting her on a murder charge which is also at the point where we realized that we should have been looking for catawba worms as well.

Q: And did you also at that juncture get a warrant for William Owens?

A: That's correct. Well, I didn't sign the warrant. I was in Maryland at the time.

Q: All right. But, you were aware –

A: Yes.

Q: -- in your investigation they were simultaneously getting a warrant for Mr. Owens?

A: Uh-huh

Q: then what did you do, Agent Johnson?

A: We had to wait around or stayed over the weekend in Maryland for an extradition hearing, and Renee voluntarily waived extradition and came back with us. Got back to Carolina. She was booked in at the Barnwell County Detention Center. Yea, Barnwell County Detention Center. She was subsequently, I think, polygraphed.

10

Tr. p. 543, line 21-544, line 20.

The trial judge quickly advised the jury to "just disregard that. That's not relevant in the trial of this case. It's not admissible." Tr. p. 544, lines 22-24. The Solicitor then stated: "No, it's not." Tr. p. 544, line 25.

Counsel testified that in light of the comments by the trial·court and the Solicitor, he did not think further curative instruction was needed, nor did he want to call attention to the matter further. Additionally, he did not think it likely the court would grant a mistrial. Counsel agreed that the testimony did not indicate whether McKinney passed or failed the polygraph, or what was asked of her while she was tested. This Court notes that Agent Johnson only stated that he thought she was polygraphed. This Court finds Counsel articulated reasonable trial strategy in regards to this testimony. Additionally, this Court finds that Applicant was not prejudiced by an alleged deficiency as the trial court gave an immediate instruction to the jury to disregard it and the Solicitor agreed the testimony was not proper. Further, this Court finds that a reasonable probability does not exist that a mistrial would be granted or that it would be considered· reversible error on appeal. Accordingly, this claim is denied.

### Rattlesnake testimony

Applicant complains that counsel should have objected to testimony that Applicant caught rattlesnakes and kept them in his house. Counsel testified that he felt that the rattlesnake testimony was not harmful to the case and that the testimony was elicited to explain how law enforcement had executed the search warrant, law enforcement had to gingerly search the premises because they were aware that there were rattlesnakes in the premises. The Court finds that Counsel made a reasonable assessment and that his performance was not deficient. Further, this Court finds that Applicant was not prejudiced as the testimony was admissible for the reason counsel stated and that had Counsel objected, there is not a reasonable likelihood it would have affected the outcome of the trial. Accordingly; this allegation is denied.

### Alibi defense

Applicant complains that an alibi instruction should have been requested by Counsel. Counsel testified that his defense was to establish a time line indicating that Applicant could not have committed the murder although he was at the crime scene that day. However, the various witnesses were ambiguous on the times and Counsel agreed that the testimony failed to establish the impossibility of Applicant being present and therefore, Counsel testified that the evidence was not sufficient to require the court to give an alibi instruction. Further, Counsel

indicated that post-verdict interviews with jurors indicated that they gave no weight to the time line defense. This Court finds Counsel testimony establishes reasonable trial strategy. Counsel's assessment that an alibi charge was not warranted is reasonable. See State v. Robbins, 275 S.C. 373, 271 S.E.2d 319 (1980) (quoting Am.Jur.2d Criminal Law§ 136 for the proposition that "[S]ince an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the accused's guilt, a purported alibi which leaves it possible for the accused to be the guilty person is no alibi at all."). The exact time of the murder was not firmly established and the witnesses gave ambiguous testimony as to the time frames. This Court finds that Applicant has failed to meet his burden as to either prong of Strickland. The allegation is denied.

### Failure to present a defense/prepare for trial

Applicant alleges counsel was ineffective because he was not prepared for trial and did not present a defense. Counsel testified that he did not believe Applicant would have benefitted from testifying and that Counsel would gain a strategic advantage from gaining last argument. However, Counsel testified that it was Applicant's decision not to testify. He testified that he did interview several witnesses who would have provided character testimony, but did not feel there were any fact witnesses beneficial to the defense that were not called by the State. Counsel testified that he did not think Applicant would have been a good witness at trial. Applicant testified at the PCR hearing that he would have been able to explain a number of things to the jury, but he did not provide any such explanations at the PCR hearing. This Court finds that the trial transcript and the PCR hearing testimony establishes that Counsel was well-prepared for trial and that his decision to not present a defense was sound trial strategy. Further, this Court finds that Applicant made a knowing and voluntary decision not to testify.

### Closing argument

Applicant complains that Counsel should have objected to the Solicitor's closing argument. The Solicitor suggested to the jury that the victim, a minister who was fishing, was kneeling, perhaps praying, when he was shot at close range by Applicant. Counsel testified that it was not an unreasonable inference from the evidence and that the argument was not prejudicial. Counsel testified that he would have objected if he thought an objection was appropriate. This Court finds Counsel's strategy for not objecting to be reasonable. Further, this Court does not believe that the closing argument was objectionable. This Court finds that Applicant has not met either prong of Strickland and denies this allegation.

### CONCLUSION

Based on the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would

12

require this court to grant his application. Therefore, this Application for Post-Conviction Relief must be denied and dismissed with prejudice.

Tr. 814-19.

A petition for writ of certiorari seeking review of the PCR court's final judgment was submitted on Petitioner's behalf to the South Carolina Supreme Court on June 3, 2013. ECF No. 18-5; *Owens v. State*, No. 2012-213147 (S.C.). South Carolina Deputy Chief Appellate Defender Wanda H. Carter raised the following issue for the court's review:

> Trial counsel erred in failing to object to the solicitor's closing remark suggesting that the deceased, who had been a church minister, was bowed down in prayer before he was shot when there was no evidence in the record supporting this assertion because this comment surely inflamed the passions of the jury by injecting religious prejudice into the trial.

ECF No. 18-5 at 2.

The State, through Assistant Attorney General David Spence, filed a return to the petition on October 16, 2013. ECF No. 18-6. The South Carolina Supreme Court denied the petition on August 21, 2014. ECF No. 18-7. The appellate remittitur issued on September 8, 2014. ECF No. 18-8.

III.    Discussion

A.    Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: Whether the court erred by excluding testimony that the decedent's son had a high ranking position in the Folk Nation Gang. . . . There was gang graffiti found near the bridge where the decedent was shot. Further, the jury was left without any context to evidence the decedent's son thought "forty-five," Cedric Thomas, killed the decedent since Thomas had threatened to shoot anyone who told on him as a drug dealer in the head, and the decedent was shot in the head.
> . . . .

13

> GROUND TWO: Ineffective Assistance of Trial Counsel . . . Counsel failed to properly; prepare for trial, Failure to call an expert witness at trial, Failure to object to improper charge on malice.
>
> Trial Counsel erred in failing to object to the solicitors closing remarks in closing argument in question constituted deficient legal representation that violated petitiner's [sic] Sixth Amendment Right to Competent trial Counsel at trial.
>
> . . . .
>
> GROUND THREE: Subject matter Jurisdiction not vested. . . . The Indictment left out necessary elements of the charges.

Pet. 5-8, ECF No. 1.

### B.    Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

a.     Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). Recently, the Supreme Court provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." 562 U.S. at 102. In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id*.; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not

grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

### b.    Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id*. at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id*. at 694. The United States

17

Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id*. at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id*. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For

purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id*. (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

### 2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the

19

rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing a PCR application. State law requires that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).

Strict time deadlines govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas-corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second

21

appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *Teague v. Lane*, 489 U.S. 288, 297-98 (1989), *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996), and *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an

22

affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome Respondent's contention, it is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

c.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

3.     Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a

reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and prejudice in his ineffective-assistance-of-counsel claim. *Id*.

IV.     Analysis

A.     Procedurally Barred Grounds

1.     The Parties' Positions

Respondent contends that part of Petitioner's Ground Two (regarding ineffective assistance of trial counsel) and all of his Ground Three (regarding sufficiency of the indictment to vest subject-matter jurisdiction in the trial court) are not properly before this court because they were procedurally defaulted. ECF No. 18 at 11-15. With regard to Petitioner's Ground Two, which contains a series of four separate assertions of ineffective assistance of trial counsel, Respondent contends that the claim that trial counsel was ineffective in failing to properly prepare for trial was raised at the PCR hearing and ruled on by the PCR judge, but that Petitioner abandoned the claim by not presenting in the petition for writ of certiorari seeking review of the PCR judgment. *Id*. at 12. Respondent also contends that Petitioner's claim that trial counsel was ineffective for failing to call an expert witness is procedurally defaulted because no evidence to support it was presented at the PCR hearing, the PCR court did not address it, and it was not raised in the petition for certiorari seeking review of the dismissal of the PCR application. *Id*. Additionally, Respondent contends that Petitioner's claim that trial counsel was ineffective for failing to object to the "implied malice" jury instruction given at trial was not properly preserved for appellate review and was specifically abandoned through counsel at the PCR hearing. *Id*. at 13-14. Insofar as Ground Three is concerned, Respondent asserts that, even though it was raised

24

by Petitioner in his pro se brief submitted in his direct appeal, the ground was specifically abandoned by his PCR counsel and was not addressed by the PCR court. *Id*. at 14-15. While Petitioner's Response to the Motion for Summary Judgment contains some "rebuttal argument" on the merits of each subpart of Ground Two and of Ground Three, Petitioner does not acknowledge or respond to Respondent's procedural-default contentions. ECF No. 23 at 2-5.

Because he presents no response to Respondent's Motion for Summary Judgment on the three subparts of Ground Two (failure to prepare, call expert witnesses, or object to the malice jury instruction) and Ground Three in his Petition and puts forth no "cause and prejudice" argument, the undersigned finds that Petitioner has conceded that those Grounds were procedurally defaulted and, therefore, are not properly before this court. *See Petrucelli v. Dep't of Justice*, No. 11-1780 (RBW), 2014 WL 2919285, at *7 (D.D.C. June 27, 2014) (prisoner case; citing *Maydak v. DOJ*, 579 F. Supp. 2d 105, 107 and holding that lack of response to a point raised in a motion for summary judgment amounts to a concession of that point) (D.D.C. 2008); *see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). Moreover, having reviewed the record as a whole, and in absence of any argument showing cause for and prejudice from the default, the undersigned agrees with Respondent that these Grounds are procedurally barred and should not be considered by this court. *See Coleman v. Thompson*, 501 U.S. at 735; *Kornahrens v. Evatt*, 66 F.3d at 1362-63.

Accordingly, the undersigned recommends that the Motion for Summary Judgment be granted insofar as it concerns the subparts of Ground Two as stated in the Petition and asserting claims of ineffective assistance of counsel for failure to prepare, call expert witnesses, or object

25

to the malice jury instruction, and that Ground Two be partially dismissed as to those claims. It is further recommended that Respondent's Motion for Summary Judgment be granted as to Ground Three as stated in the Petition and that Ground Three be dismissed.

      B.     Merits Analysis:

          1.     Ground One: Trial Court's Limitation of Cross Examination Regarding Victim's Son's Alleged Gang Membership

              a.     The Parties' Positions

Respondent contends that the trial court did not abuse its discretion or violate Petitioner's constitutional rights when it refused to allow Petitioner's trial counsel to bring up the issue of the victim's son's involvement in the Folk Nation Gang during cross examination of a law enforcement witness who had received information from the son about possible involvement of a gang member/drug dealer in his father's killing. ECF No. 18 at 20. Respondent contends that the jury was allowed to hear about the witness' interview with the victim's son and about the son's reference to the drug dealer as a possible suspect, but there was insufficient other evidence of possible gang involvement presented to make the proffered information about the son's gang involvement relevant to Petitioner's case. *Id.* Respondent further contends that this court should not question the propriety of state judge's application of South Carolina's evidentiary rules in this habeas action in absence of a showing of an extreme mistake that so prejudiced the petitioner that he was denied a constitutionally fair proceeding. *Id.* at 21-22. Petitioner responds that the trial court's limitation of cross examination about the son's gang involvement left the jury "without any context" to the evidence that was admitted about the son's identification of the drug dealer as a possible murderer. ECF No. 23 at 2. Petitioner also contends that there was sufficient evidence of gang involvement (gang graffiti in the area, testimony that the Sheriff

26

initially thought the killing might be gang related, law enforcement's failure to question the drug

dealer) to make the son's gang involvement relevant. *Id*

> b.    Petitioner's Constitutional Rights Were Not Violated When
> the Trial Court Refused to Allow Trial Counsel to Question
> a Witness About the Victim's Son's Alleged Connection to
> the Folk Nation Gang

This Ground is based on the trial court's refusal to allow Petitioner's trial counsel to bring up

the fact that the victim's son held a high-level position in the Folk Nation gang during counsel's

cross examination of an Agent of the South Carolina Law Enforcement Division ("SLED") who

spoke with the victim's son before the trial. App. 563-65. The trial court stopped Petitioner's trial

counsel's examination of the Agent when it appeared that counsel was going to ask about the son's

gang involvement, stating "[t]hat's totally irrelevant." App. 565. At that point, trial counsel proffered

the information that he was seeking to elicit from the witness about the son and about gang graffiti

that was seen in the area of the murder. App. 566. But, the witness opined that the murder did not

appear to be gang related and the graffiti was not specifically tied to the murder. App. 567-68. The

Solicitor also elicited testimony from the Agent that the victim's son told him that he was no longer a

gang member. App. 570. The Barnwell County Sheriff testified in connection with the proffer that

law enforcement had no evidence indicating that the victim's murder was gang related. App. 571.

After the proffer, the trial judge confirmed his initial ruling that the information about the son's gang

membership was not relevant. App. 572. The witness was allowed to testify that the victim's son had

given him the name of a drug dealer who was a member of the Folk Nation and who had allegedly

threatened to kill anyone "in the head" who reported the dealer's illegal activities. App. 574. The

witness also confirmed before the jury that law enforcement had not spoken with the drug dealer

because they were following leads they had received about Petitioner's involvement. App. 576.

During his PCR testimony, Petitioner's trial counsel stated that although the evidence did not support a true alibi defense for Petitioner, he did try to use testimony from a law enforcement witness about threats allegedly made by the person the victim's son called "forty-five" to "develop a third-party defense . . . ," but he did acknowledge that the trial judge prevented him from asking the witness about whether the victim's son was "involved with the Folk Nation [gang]." App. 784. This trial-related issue was exhausted through Petitioner's direct appeal to the South Carolina Supreme Court and, although there was testimony about it during the PCR hearing, it was not addressed by the PCR court.

The Fourth Circuit Court of Appeals has stated, "Importantly, in considering federal habeas corpus issues involving state evidentiary rulings, 'we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.'" *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) (quoting *Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000)); *see also Harrington v. Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 442 U.S. 307, 332 n.5 (1998)) ("Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."). Federal habeas review of a state court's evidentiary rulings is limited to a consideration of whether any prejudice from the admission (or exclusion) of the evidence of the acts so outweighed its probative value as to give rise to "circumstances impugning fundamental fairness or infringing specific constitutional protections." *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960); *see Norris v. South Carolina*, 309 F. Supp. 1113, 1117 (D.S.C. 1970) ("Normally, the admissibility of evidence . . . in state trials are matters of state law and procedure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a

28

federal question is presented. The role of a federal habeas corpus petition is not to serve as an additional appeal.").

Following review of the record in this case and the parties' contentions, the undersigned finds that Petitioner has not sustained his burden of showing that the trial court's ruling -- that information about the victim's son's gang affiliation was irrelevant and, therefore, not something that trial counsel could raise through cross examination of the SLED agent -- constituted an unreasonable application of federal law or that it was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Also, the trial court's evidentiary ruling under the circumstances presented at Petitioner's trial did not impugn the "fundamental fairness" of the trial or infringe on Petitioner's constitutional rights. Although Petitioner argues that the exclusion of that piece of information left the jury "without context" for the information obtained from the son about possible third-party involvement in his father's murder, there is nothing in the record to substantiate that argument. The jury was provided with the full substance of the information that the victim's son provided him about the alleged threat by "forty-five" or "Cedric Thomas" to kill someone "in the head." App. 564, 573-77. Also, Petitioner's trial counsel included substantial argument about this "third-party defense" in his final closing statement to the jury. App. 688-90. Although the information about the son's past affiliation with the Folk Nation gang might have provided the jury with some background or "context" for the son's knowledge of "forty-five's" threat, it did not have such a probative value to the ultimate issue of Petitioner's guilt that its exclusion from the evidence violated the fundamental fairness of the trial. There was substantial other evidence presented that tied Petitioner to the crime, the full substance of the son's tip was made known to the jury, and Petitioner's trial counsel was able to make law enforcement's failure to follow

up on it a significant part of closing argument. Moreover, the South Carolina Supreme Court's affirmance of Petitioner's conviction on direct appeal indicates that the trial court's relevancy ruling was appropriate under South Carolina state law, and the state courts' rulings on such evidentiary issues are entitled to great deference in absence of a showing that Petitioner's trial was rendered fundamentally unfair. *See Harrington*, 562 U.S. at 786 (federal habeas relief is not available to provide "ordinary error correction" that is available through a direct appea1).

Accordingly, Respondent's Motion for Summary Judgment on Petitioner's Ground One as stated in the Petition should be granted and Ground One should be dismissed.

        2.      Ground Two Claim That Trial Counsel Was Ineffective for Failing to Object to the Solicitor's Closing Argument About the Victim Praying When He Was Killed

        a.      The Parties' Positions

Respondent contends that the PCR court properly found that Petitioner's trial counsel was not ineffective for not objecting to the Solicitor's closing argument because the argument was based on a reasonable inference from the crime-scene expert's trial testimony, the decision not to object was reasonable trial strategy, and Petitioner was not prejudiced by the lack of objection. ECF No. 18 at 23. Petitioner responds that his trial counsel's failure to object to the Solicitor's closing argument violated his "Sixth Amendment right to competent trial counsel at trial." ECF No. 23 at 5. Petitioner contends that trial counsel's error is not harmless because it affected "'the framework within which the trial proceed[ed].'" *Id.* (quoting *Arizona v. Fulminante*, 499 U.S. 2779 (1991)). The PCR court determined that the disputed argument was not objectionable because it was based on reasonable inferences from the trial evidence, and that, in any event, trial counsel expressed a reasonable trial strategy for not objecting that did not prejudice Petitioner. App. 819.

        b.      Trial Counsel Was Not Ineffective for Failing to Object to the Solicitor's Closing Argument

In her closing argument to the jury at Petitioner's trial, when discussing the victim's death, the Solicitor stated:

> I dare say he was executed. Why? Because the distance between the weapon and his head was three to six inches, and it was straight through his head, and it was with a high velocity weapon that took out his brain stem and brain pons and half the front of his face. That is execution. And what is he trying to tell you? He [is] trying to tell you, I am not sitting on the fishing bucket. That's too far, but I could have been on my knees. I was bent where it didn't get in my lap. I was bent, and I fell right there. I dare say that Defendant executed Reverend McCreary. He was on his knees and I dare say Reverend McCreary was praying.

App. 667. Petitioner's trial counsel did not object to this portion of the Solicitor's argument and Petitioner asserts that he rendered ineffective assistance of counsel because he did not object. During the trial, the State had presented live testimony from a crime-scene expert from SLED. In relevant part, the expert discussed blood-spatter evidence and expressed the following opinion about the way the victim was positioned at the time he was shot:

> the victim was bent at the waist and we can tell that from the lack of spatter from here at the waistline to about the inseam area. There is no spatter there, and if you look at the photos there is spatter on his legs. There is spatter on his chest which would tell me he was sitting or kneeling or at least bent over at the waist at the time he was shot.

App. 495. When questioned extensively about his reasons for not objecting to the Solicitor's argument, trial counsel stated that he did not think it was improper in light of the evidence that had been presented during the trial. App. 776. Trial counsel also indicated that even if he had believed that the argument was improper, he would not have objected because "[s]ometimes you just don't want to emphasize things by having it repeated." App. 777.

Under South Carolina law, prosecutorial argument is not improper so long as it is based on evidence in the record and reasonable inferences from that evidence. *See Humphries v. State*, 570 S.E.2d 160, 166 (S.C. 2002). Additionally, it has been stated that often "'seasoned trial counsel do

not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good.'" *Deck v. State*, 381 S.W.3d 339, 356 (Mo. 2012) (quoting *State v. Tokar*, 918 S.W.2d 753, 768 (Mo. 1996)). Further, insofar as trial strategy is concerned in an ineffective-assistance-of-counsel claim, the United States Supreme Court has stated, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting from *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The Court stated, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." 466 U.S. at 690 (citing to Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58 N.Y.U.L. Rev. 299, 343 (1983)). The Fourth Circuit has also indicated that deference will be given to trial counsel's reasonable or plausible strategic decisions, particularly where there is no clear showing of prejudice to the petitioner from such strategy. *See Lovitt v. True*, 403 F.3d 171, 181 (4th Cir. 2005) (refusing to misuse "power of hindsight" to second guess trial counsel's "plausible strategic judgments.") (quoting from *Bunch v. Thompson*, 949 F.2d 1354, 1364 (1991)); *Sexton v. French*, 163 F.3d 874, 887 (4th Cir.1998) ("Obviously, this tactical decision made by . . . trial counsel cannot be second-guessed by this court . . . ."); *Fitzgerald v. Thompson*, 943 F.2d 463, 469 (4th Cir. 1991) ("[T]rial counsel made reasonable tactical decisions that should not now be second-guessed on collateral review.").

The Solicitor's argument that the victim was "executed" and that he might have been praying when he was shot is supported by the State's expert testimony about how the crime scene appeared and how the victim was killed. In addition to the quoted testimony about what the blood splatter evidence indicated about the victim's position at the time he was shot, the expert also testified extensively about the victim's having suffered a "massive" head wound and that he was either "helped or thrown into the water" after being shot. App. 480-91. He also stated that the victim "was definitely shot" by a "large caliber weapon." App. 499-500. On cross examination by Petitioner's trial counsel about where the victim was located when he was shot, the expert reiterated that "the only thing I can say is he was in a crouched, seated, or kneeling position, and that is from the evidence on his pants." App. 505. The pathologist who performed an autopsy on the victim also testified that her examination of the body indicated that the gunshot that killed him was fired from "immediate range," which she testified meant that "the barrel of the gun was within a few inches of the [victim's] skin." App. 518.

Following review of the record, the parties' arguments, and the applicable law, the undersigned finds that the Solicitor's argument was adequately supported by reasonable inferences from the expert testimony about the crime scene and the condition of the victim's body during the autopsy. Also, Petitioner has not shown that he was prejudiced by the argument in light of the considerable amount of evidence of guilt against him that was produced by the State such as testimony that the same kind of worms the victim had while fishing were found at Petitioner's home, he bragged about the murder to his girlfriend on the same day the murder took place, the victim's jewelry was found in a bag found in Petitioner's home, and he told his cousin that he killed a man.

Moreover, Petitioner's trial counsel stated during his PCR testimony,

Reverend McCreary was shot in the back of the head, whether he was kneeling, sitting on the bucket, it didn't make any difference. You know the fact is he was shot in the back of the head. It is reasonable to assume that the person who's about to be shot in the back of the head would be praying. So I didn't think it was necessary or important to call that to the jury's attention. Sometimes you just don't want to get into things, you know, that could inflame the jury, you know, even more. Sometimes you just don't want to emphasize things by having it repeated.

App. 776. As noted earlier, "[i]n many instances, seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes." *Deck*, 381 S.W.3d at 356. This is precisely the type of strategy that trial counsel appears to have employed. Thus, even if the Solicitor's argument were objectionable, the PCR court reasonably determined that trial counsel did not render ineffective assistance in employing such trial strategy and this court should defer to the that determination. *See Lockyer v. Andrade*, 538 U.S. at 75; *Lovitt v. True*, 403 F.3d at 181.

Accordingly, Respondent's Motion for Summary Judgment on Petitioner's Ground Two claim of ineffective assistance relating to the Solicitor's closing argument as stated in the Petition should be granted and Ground Two should be dismissed.

## V.     Conclusion

The undersigned has considered each of Petitioner's grounds for habeas-corpus relief and recommends that each be dismissed. It is recommended that Respondent's Motion for Summary Judgment, ECF No. 19, be GRANTED and that the Petition in this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

May 19, 2015                                        Kaymani D. West
Florence, South Carolina                    United States Magistrate Judge

34

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).